IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SIC BYNUM                                                                                       PLAINTIFF

V.                                                      CIVIL ACTION NO. 3:10-CV-862-DPJ-FKB

CAL-MAINE FARMS, INC.                                                                DEFENDANT

ORDER

This wage-and-hour dispute is before the Court on Defendant Cal-Maine Farms, Inc.'s motion for summary judgment [28] and Plaintiff Sic Bynum's motion for partial summary judgment as to liability [20].  Having considered the parties' memoranda and submissions, along with the pertinent authorities, the Court finds that Bynum was employed in agricultural and therefore ineligible for overtime wages.  Defendant's motion is granted and Plaintiff's motion is denied.

I.      Facts and Procedural History

Bynum worked at Defendant Cal-Maine's Mendenhall hatchery where fertilized eggs are hatched, and the chicks are processed for transportation to other Cal-Maine egg-laying facilities.  Bynum received no overtime wages for his work, and he filed this suit for himself and on behalf of all similarly situated current and former Cal-Maine employees under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq*.

Cal-Maine previously moved to dismiss Bynum's Complaint pursuant to Rule 12(b)(6), but the Court found that Cal-Maine had relied on facts not alleged in the Complaint.  The parties have now engaged in discovery and filed cross-motions for summary judgment.  All applicable facts are undisputed, leaving one issue of law for the Court to decide—whether Bynum was

employed in agriculture and therefore ineligible for overtime. The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard of Review

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

III.    Analysis

The central question is whether Cal-Maine's hatchery is exempt from the FLSA on the grounds that Bynum was an "employee employed in agriculture" under § 213(a)(6). Bynum contends that the agricultural exemption is inapplicable because some of the eggs used in the hatchery came from outside sources. For reasons that follow, the Court disagrees.

    A.      Statutory and Regulatory Background

The Fair Labor Standards Act of 1938 was created to benefit and protect employees by establishing a minimum-wage requirement as well as a forty-hour workweek. Section 207 of the Act provides that

> [e]xcept as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Those individuals covered by the FLSA's provisions are protected by a number of enforcement mechanisms. In particular, § 216(b) authorizes employees to sue employers to recover unpaid minimum wages or overtime compensation.

But exceptions apply, including the one central to this case. Wage-and-hour provisions are inapplicable to any "employee employed in agriculture." 29 U.S.C. § 213(a)(6). The term "agriculture" is defined in § 203(f) to

> include[] farming in all its branches and among other things includes the . . . *raising of . . . poultry*, and any practices . . . performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

*Id.* § 203(f) (emphasis added). This "provision defines agriculture in both a primary and a secondary sense." *NLRB v. Cal-Maine Farms, Inc.*, 998 F.2d 1336, 1338 n.1 (5th Cir. 1993) (citation omitted). "The primary meaning encompasses 'farming in all its branches,' including such practices . . . as the raising of poultry." *Id*. The secondary meaning covers practices "incident[] to or in conjunction with such farming operations." *Id.* (citations and internal quotation marks omitted).

"The raising of poultry is primary farming . . . ." *Bayside Enters., Inc. v. NLRB*, 429 U.S. 298, 300–301 (1977). And "[t]he 'raising' of poultry includes . . . . hatching." 29 C.F.R. § 780.125(b); *see also* 29 C.F.R. § 780.127 ("[H]atchery operations incident to the breeding of poultry, whether performed in a rural or urban location, are the 'raising of poultry.'"). "Where the hatchery is engaged solely in procuring eggs for hatching, performing hatching operations, and selling the chicks, all the employees including office and maintenance workers are engaged in agriculture." 29 C.F.R. § 780.210. Finally:

3

> [t]he work of hatchery employees in connection with the maintenance of the quality of the poultry flock on farms is also part of the "raising" operations. This includes testing for disease, culling, weighing, cooping, loading, and transporting the culled birds. The catching and loading of broilers on farms by hatchery employees for transportation to market are agricultural operations.

29 C.F.R. § 780.212. In short, hatchery operations are primary farming operations that fall within the definition of "agriculture" for purposes of the FLSA.

  B. Bynum's Employment

  While employed at Cal-Maine's hatchery, Bynum's job duties included (1) unloading fertilized eggs, (2) placing eggs in holding coolers, (3) setting eggs in the incubator, and (4) separating the chicks from unhatched eggs on the day of the hatch. Def.'s Mot. [28] Ex. A (Gilreath Aff.) at ¶ 6. There is no real dispute that these activities constitute employment in agricultural. *See*, *e.g.*, *Miller Hatcheries, Inc. v. Boyer*, 131 F.2d 283, 284–85 (8th Cir. 1942) (applying agricultural exemption to hatchery employees). But Bynum insists that Cal-Maine loses the agricultural exemption because it obtains some fertilized eggs from outside sources—a fact Cal-Maine accepts as true.

  In support of his argument, Bynum relies primarily on the Fifth Circuit's holding in *NLRB v. Cal-Maine Farms, Inc.*, where it examined whether employees were "agricultural laborers" and therefore exempt from protection under the National Labor Relation Act ("NLRA"). 998 F.2d 1336 (5th Cir. 1993). In that case, the defendant employer was engaged in egg processing—not hatching—and the evidence supported a finding that some of the eggs it processed for sale were procured from outside sources. The central issue was whether obtaining eggs from other sources for resale nullified the agricultural exemption for purposes of the NLRA.

The court began its analysis by noting that the NLRA fails to define "agricultural laborers," but that riders to the NLRB's annual appropriations acts provide that the term shall be defined in accordance with § 203(f) of the FLSA. *Id*. at 1338 n.1. The Fifth Circuit then looked to the NLRB's interpretation of "agricultural laborers" as addressed in *Camsco Produce Co., Inc. v. Local 951, United Food and Commercial Workers*, 297 NLRB 905 (1990), where the NLRB "held that the [NLRA's] exemption for 'agricultural laborers' would be based on whether the employees in question 'regularly' handle 'any' amount of the products of outside producers." *Cal-Maine Farms, Inc*., 998 F.2d at 1338. Applying this "regularity" standard, the Fifth Circuit found sufficient evidence to support a finding that the employees in *Cal-Maine Farms* were not "agricultural laborers."

Although *Cal-Maine Farms* is superficially similar to the case at hand, it is distinguishable. Significantly, the laborers in *Cal-Maine Farms* merely processed eggs for sale or resale. As such, their work fell outside the primary definition of "agriculture," *i.e*., "farming in all its branches" including "raising of poultry," and fell instead under the secondary definition of "agriculture" which includes work "incident[] to or in conjunction with such farming operations." *Id*. at 1338 n.1. This distinction lies at the heart of the NLRB's decision in *Camsco Produce*, the case providing the "regularity" standard. As stated in *Camsco Produce*, when the secondary definition applies, the Department of Labor includes an additional requirement:

> No practice performed with respect to farm commodities is within the language under discussion [the secondary meaning of "agriculture"] by reason of its performance on a farm unless all of such commodities are the products of that farm. Thus, the performance on a farm of any practice, such as packing or storing, which may be incidental to farming operations cannot constitute a basis for considering the employees engaged in agriculture if the practice is performed upon any commodities that have been produced elsewhere than on such farm.

*Camsco Produce*, 297 NLRB at 906 (citing 29 C.F.R. 780.141 (1974)).  It is this regulation that generated the NLRB's "regularity" standard adopted in *Camsco Produce* and later applied in *Cal-Maine Farms*.

But the "regularity" standard has no application to the undisputed facts in this case because Cal-Maine was involved in primary farming operations.  Unlike Defendant's operations in *Cal-Maine Farms*, the facility in question was a hatchery that produced or obtained fertilized eggs for hatching.  It did not process table eggs for sale or resale.[1]  After the fertilized eggs are incubated and hatched, Cal-Maine services and processes the chicks before transporting them to other Cal-Maine egg-laying facilities where the chickens produce table eggs.  Def.'s Mot. [28], Ex. A (Gilreath Aff.) ¶¶ 2–6.  In the statutory context, Cal-Maine was involved in the "raising of . . . poultry," which is a primary agricultural activity for which 29 C.F.R. 780.141 and the "regularity" standard have no application.  29 U.S.C. § 203(f); *see also* 29 C.F.R. § 780.127 ("Hatchery operations incident to the breeding of poultry, whether performed in a rural or urban location, are the 'raising of poultry. . . .'"); 29 C.F.R. § 780.212 ("The work of hatchery employees in connection with the maintenance of the quality of the poultry flock on farms is also part of the 'raising' operations."); 29 C.F.R. § 780.210 ("the typical hatchery is engaged in 'agriculture,' . . . [w]here the hatchery is engaged solely in *procuring* eggs for hatching, performing the hatching operations, and selling the chicks . . . ." (emphasis added)).

Buying table eggs and reselling them is simply different from buying fertilized eggs and raising poultry that the employer keeps and uses to lay table eggs.  The latter is a primary

---

[1]Table eggs are produced for human consumption; fertilized eggs are incubated and allowed to hatch.

agricultural operation, and Bynum offers no authority for applying the "regularity" standard in that context.[2]  The Court concludes that Bynum was an "employee employed in agriculture," 29 U.S.C. § 213(a)(6), and his claim should be dismissed.

IV.     Conclusion

For the foregoing reasons, the Court concludes that Defendant's motion for summary judgment should be granted.  Plaintiff's claims are dismissed with prejudice.

A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be entered.

SO ORDERED AND ADJUDGED this the 26th day of July, 2012.

                    s/ *Daniel P. Jordan III*
                    UNITED STATES DISTRICT JUDGE

---

[2]Defendant, without addressing the primary/secondary farming operation analysis, distinguished *Cal-Maine Farms* by noting the plant in that case resold procured table eggs and stressed that the regulations specifically include hatchery operations in the agricultural exemption.  Putting aside the primary/secondary farming operation issue, the Court agrees that *Cal-Maine Farms* is factually distinguishable and Plaintiff has not offered any authority to suggest that procuring outside commodities that are used in the employer's operation—rather than resold to the public—results in a loss of the agricultural exemption.